NO.  14-1327

In The

# United States Court of Appeals

For The Fourth Circuit

LLOYD E. MITCHELL INCORPORATED

v.

NICHOLL CLAIMANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____

**OPENING BRIEF OF NICHOLL CLAIMANTS
(REDACTED)**

_____

P. ANDREW TORREZ
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332.0444
atorrez@zuckerman.com

*Counsel for Nicholl Claimants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**CERTIFICATE OF CONFIDENTIALITY, LOCAL RULE 25(c)**

No. _____    Caption: _____

_____
(appellant, appellee, petitioner, respondent, other)

certifies the following information regarding sealing of the document(s) described below:

1. Identify document(s) filed (e.g., sealed appendix volume, sealed version of brief):

_____

2. Is sealing of document(s) necessary?

    [  ] No
    [  ] Yes, to protect material sealed under the Privacy Policy for Electronic Case Files, or
        by statute, rule, regulation, or order

3. Date(s) of order(s) sealing the material or, if there is no order, the authority relied upon to treat the material as sealed:

_____
_____

4. Terms of order sealing the material, including who is permitted access to sealed material (if filed ex parte, document must be marked SEALED and EX PARTE):

_____
_____

5. (For SEALED APPENDIX)  Sealed record material has been separated from any unsealed record material and placed in a separate, sealed volume of the appendix.

    [  ] Yes

6. (For SEALED BRIEFS, SEALED DOCUMENTS)  Two versions of document are filed: Sealed version with sealed material highlighted and public version with sealed material redacted.

    [  ] Yes

_____            _____
      (date)                                                      (signature)

02/05/2014  SCC

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 26.1 and 28(a) of the Federal Rules of Appellate Procedure, the Law Offices of Peter T. Nicholl have no parent corporation, and there is no publicly held corporation with any ownership interest in the Law Offices of Peter T. Nicholl.

# TABLE OF CONTENTS

CERTIFICATE OF CONFIDENTIALITY, LOCAL RULE 25(c)

CORPORATE DISCLOSURE STATEMENT

TABLE OF CONTENTS.................................................................i

TABLE OF CASES, STATUTES, AND AUTHORITIES......................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.............................................................1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ON APPEAL .................2

STATEMENT OF THE CASE..................................................2

STATEMENT OF FACTS .......................................................3

SUMMARY OF ARGUMENT ................................................7

STANDARD OF REVIEW ....................................................8

ARGUMENT .....................................................................10

    I.    THE DISTRICT COURT ERRONEOUSLY HELD THAT THE BANKRUPTCY COURT APPLIED THE PROPER LEGAL STANDARD IN GRANTING RELIEF FROM THE AUTOMATIC STAY....................................................................10

        A.    In Order To Lift The Automatic Stay, The Bankruptcy Court Must Find That All Three Factors Set Forth By This Court In *Robbins* Favor Lifting The Stay........................10

        B.    The District Court Mischaracterized The Bankruptcy Court's Order as Correctly Applying *Robbins* When, In Fact, It Did Not............................................................12

    II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BECAUSE A PROPER *ROBBINS* INQUIRY REQUIRES THE BANKRUPTCY COURT TO DETERMINE THAT LIFTING THE AUTOMATIC STAY IS SUBSTANTIVELY FAIR, AND NOT MERELY PROCEDURALLY FAIR ...............................................13

i

A.    Under *Robbins*, A Bankruptcy Court Must Determine Whether Lifting the Automatic Stay Actually Risks Unequal Treatment of Creditors ...............................................................................13

    1.    One of the Primary Purposes of the Automatic Stay is to Protect the Debtor By Ensuring Equal Treatment of All Creditors .......................................................................13

    2.    Contrary to the Requirements of *Robbins*, The Bankruptcy Court Did Not Determine That Lifting the Automatic Stay Would Not Favor Some Creditors at the Expense of Other, Similarly-Situated Creditors In Deciding to Lift the Stay ................................................15

    3.    Instead, The Bankruptcy Court Erroneously Believed that the Hartford County Court Would Determine Whether the Proposed Settlement Was Fair and Equitable to All Creditors, Including the Non-Settling Claimants ...........18

B.    Despite the Clear Language of the Initial Lift Stay Order, the Appellees Argued – and the Hartford County Court Erroneously Agreed – that the Hartford County Court Could Approve the Proposed Settlement Agreement Without Evaluating Whether the Proposed Settlement Was Fair and Equitable to the Non-Settling Claimants ...................................19

    1.    The Appellees Explicitly Urged the Hartford County Court to Ignore Whether the Prospective Settlement is Fair or Adequate to the Non-Settling Claimants ............19

    2.    The Hartford County Court Refused to Determine "What Will Happen To Other Claimants" In the Event That the Stay Is Lifted.................................................................20

    3.    The Hartford County Court Could Not Have Properly Applied *Shelton v. Pargo* in Any Event Because It Did Not Have the Settlement Amounts and the Settling Parties Before It ............................................................23

III.   IN ITS ONLY SUPPOSED FACTUAL FINDING, THE DISTRICT COURT DREW AN ERRONEOUS LEGAL DISTINCTION BETWEEN FUNDS PAID BY THE ESTATE AND FUNDS PAID BY THE INSURERS ..........................................................26

    A.   Insurance Proceeds Are Property of the Debtor's Estate...........26

    B.   Consummation of the Proposed Settlement Agreement Threatens the Sole Asset of the Debtor's Estate.......................27

    C.   The Potential Harm to Non-Settling Parties is Real and Not "Speculative" ........................................................................28

CONCLUSION .................................................................................33

REQUEST FOR ORAL ARGUMENT ...................................................33

CERTIFICATE OF COMPLIANCE.......................................................34

CERTIFICATE OF SERVICE ..............................................................34

ADDENDUM ......................................................................... A-1

    11 U.S.C. § 362(a)(1) ................................................... A-1

    11 U.S.C. § 362(d)....................................................... A-1

    11 U.S.C. § 362(d)(1) .................................................. A-1

    11 U.S.C § 541(a)(1) ................................................... A-1

    28 U.S.C. § 158(a) ...................................................... A-1

    28 U.S.C. § 158(d)...................................................... A-2

iii

# TABLE OF AUTHORITIES

## Cases

*A.H. Robins Co. v. Piccinin*,
  788 F.3d 994 (4th Cir. 1986), *cert. denied*,
  479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) ............................14, 26

*Boyd v. Bell Atlantic-Maryland, Inc.*,
  887 A.2d 637 (2005)...................................................................................24

*Clark v. Ezra*,
  286 Md. 208, 406 A.2d 922 (1979) ............................................................25

*Claughton v. Mixson*,
  33 F.3d 4 (4th Cir. 1994) ...........................................................................11

*Commerzanstalt v. Telewide Systems, Inc.*,
  790 F.2d 206 (2d Cir. 1986) .......................................................................16

*Dotson v. Bell Atlantic-Maryland, Inc.*,
  2003 WL 23508428 (Md. Cir. Ct. Nov. 13, 2003)......................................29

*Farm Credit of Cent. Florida, ACA v. Polk*,
  160 B.R. 870 (M.D. Fla. 1993).....................................................................16

*Goldenberg v. Marriott PLP Corp.*,
  33 F.Supp.2d 434 (D.Md. 1998)..................................................................29

*Holtkamp v. Littlefield (Matter of Holtkamp)*,
  669 F.2d 505 (7th Cir. 1982) ......................................................................15

*H&H Beverage Distributors v. Dep't of Revenue of Comm. of Pa.*,
  850 F.2d 165 (3d Cir. 1988) ................................................................14, 15

*In re 2655 Bush LLC*,
  2012 WL 2792325 (Bktcy. N.D. Cal. July 6, 2012).....................................30

*In re Cady*,
  440 B.R. 16 (Bktcy. N.D.N.Y. Nov. 22, 2010) ...........................................29

*In re Davis*,
730 F.2d 176 (5th Cir. 1984) .........................................................26

*In re Huffman*,
989 F.2d 493, 1993 WL 83359 (4th Cir. 1993)................................11

*In re Ionosphere Clubs, Inc.*,
133 B.R. 5 (S.D.N.Y. 1991) ...........................................................15

*In re Irwin*,
457 B.R. 413 (Bktcy. E.D. Pa. Sept. 15, 2011) ...............................31

*In re Johns Manville Corp.*,
340 B.R. 49 (S.D.N.Y. 2006), *aff'd in part, rev'd in part on other grounds*,
600 F.3d 135 (2d Cir. 2010) ..........................................................32

*In re Landmark Fence Co., Inc.*,
2011 WL 6826253 (C.D. Cal. Dec. 9, 2011)....................14, 16, 30

*In re Martha Washington Hosp.*,
157 B.R. 392 (N.D. Ill. 1993)..........................................................15

*In re Microsoft Corp. Antitrust Litigation*,
332 F.Supp.2d 890 (D.Md. 2004)....................................................29

*In re Paradise Homes, Inc.*,
2008 WL 619330 (Bktcy. S.D. Ill. Mar. 5, 2008) ...........................30

*In re Schwartz*,
954 F.2d 569 (9th Cir. 1992) .........................................................14

*In re Sky Group Int'l, Inc.*,
108 B.R. 86 (Bankr.W.D.Pa. 1989)................................................16

*In re Sonnax Industries*,
907 F.2d 1280 (2d Cir. 1990) ...........................................................1

*Lincoln Sav. Bank v. Suffolk County Treasurer*
(*In re Parr Meadows Racing Ass'n, Inc.*),
880 F.2d 1540 (2d Cir. 1989), *cert. denied*,
493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) ...............15

v

*Loudoun Leasing Dev. Co. v. Ford Motor Credit Co.*
  (*In re K&L Lakeland, Inc.*),
  128 F.3d 203 (4th Cir. 1997) .................................................................9

*Nat'l Environmental Waste Corp. v. City of Riverside*
  (*In re Nat'l Environmental Waste Corp.*),
  129 F.3d 1053 (9th Cir. 1997) ...........................................................1

*Robbins v. Robbins (In re Robbins)*,
  964 F.2d 342 (4th Cir. 1992) ....................................................*passim*

*Royal Ins. Co. of America v. McCrory Corp.*,
  1996 WL 204482 (S.D.N.Y. Apr. 25 1996) .....................................16, 25, 30

*Safety-Kleen, Inc. v. Wyche*,
  274 F.3d 846 (4th Cir. 2001) ...........................................................1

*Shelton v. Pargo*,
  582 F.2d 1298 (4th Cir. 1978) ................................................*passim*

*Tringali v. Hathaway Machinery Co., Inc.*,
  796 F.2d 553 (1st Cir. 1986).......................................................1, 14

*United States v. Mehta*,
  594 F.3d 227 (4th Cir. 2010) ...........................................................8

*University Med. Center v. Sullivan*
  (*In re Univ. Med. Center*),
  973 F.2d 1065 (3d Cir. 1992) ...........................................................15

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ...........................................................9

*Winters By and Through McMahon v. George Mason Bank*,
  94 F.3d 130 (4th Cir. 1996) ...........................................................14

## Statutes & Rules

11 U.S.C. § 362(a)(1)............................................................................2

11 U.S.C. § 362(d) .............................................................................9

11 U.S.C. § 362(d)(1)..........................................................................9, 10

11 U.S.C § 541(a)(1)...............................................................................26

28 U.S.C. § 158(a) ...................................................................................1

28 U.S.C. § 158(d) ...................................................................................1

## **Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)
      U.S. Code Cong. & Admin. News 5787 (1978), reprinted ....................14, 16

Manual for Complex Litigation, Third § 30.42 at 238 (1995) ...............................29

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 158(a), (d).  Subsection (a) permitted the United States District Court for the District of Maryland (the "District Court") to review an order granting or denying relief from the automatic stay by the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court").  JA 0254; *see Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 864 n.4 (4th Cir. 2001); *see also Nat'l Environmental Waste Corp. v. City of Riverside (In re Nat'l Environmental Waste Corp.)*, 129 F.3d 1053, 1042 (9th Cir. 1997) (same); *In re Sonnax Industries*, 907 F.2d 1280, 1283 (2d Cir. 1990) (same); *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 558 (1st Cir. 1986) (collecting cases).  The District Court issued a final decision affirming the Bankruptcy Court's order lifting the automatic stay and denying reconsideration on March 26, 2014.  JA 0254-268.  Subsection (d) states that this court "shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."  28 U.S.C § 158(d).

1

## STATEMENT OF ISSUE PRESENTED FOR REVIEW ON APPEAL

Whether the District Court erred in affirming the Bankruptcy Court's Order granting relief from the automatic stay, pursuant to 11 U.S.C. § 362(a)(1), permitting certain claimants to enter into and implement a Proposed Settlement Agreement that could exhaust the sole asset of the Debtor ahead of similarly situated non-settling claimants, including Appellants.

## STATEMENT OF THE CASE

On November 29, 2012, on joint motion of the Appellees, the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") lifted the automatic stay to permit the Appellees to enter into the Proposed Settlement (the "Lift Stay Order").  JA 0099-113.  The Nicholl Claimants filed a timely motion for reconsideration on the grounds that the Bankruptcy Court had not resolved whether the Proposed Settlement was fair and appropriate as it was required to do.  JA 0114-120.  After briefing, the Bankruptcy Court denied the Nicholl Claimants' motion on March 29, 2013.  JA 0121-126.  Appellants timely appealed the Bankruptcy Court's 11/29/2012 and 3/29/2013 Orders to the United States District Court for the District of Maryland (the "District Court") on April 11, 2013.  JA 0127-131.  The District Court affirmed the Bankruptcy Court's orders on March 26, 2014 in a fifteen-page Memorandum Opinion filed under seal.  JA 0143; 0254-

2

268.  Appellants timely appealed the District Court's order to this Court on April 7, 2014.  JA 0144.

## STATEMENT OF FACTS

Lloyd E. Mitchell, Inc. ("LEM" or the "Debtor") is a Maryland corporation that sold, distributed and installed asbestos-containing products as part of its mechanical contracting business in Baltimore.  JA 0099; 0255.  LEM ceased operations in 1976 and liquidated its operating assets in order to defend itself from the thousands of asbestos-related personal injury claims that have been filed against it arising from LEM's prior activities (the "Asbestos Claims").  *Id.* Appellees Maryland Casualty Company ("Maryland Casualty") and the Travelers Indemnity Company ("Travelers") (collectively, the "Insurers") issued certain liability insurance policies to LEM that provide coverage for Asbestos Claims (the "Policies").  JA 0038; 0255.

Approximately 90% of some 20,000 claimants that filed Asbestos Claims against the Debtor ("Asbestos Claimants") are represented by two law firms:  the Law Offices of Peter T. Nicholl (the "Nicholl Firm"), which represents approximately 9,500 Asbestos Claimants, and the Law Offices of Peter T. Angelos (the "Angelos Firm"), which represents over 9,000 Asbestos Claimants.  JA 0101; 0256.  In 1988, Maryland Casualty initiated a lawsuit in the Circuit Court for Harford County, Maryland seeking a declaration that it owed no duty to defend

3

LEM pursuant to the Policies (the "Coverage Action"). JA 0038; 0255. In 2008, Maryland Casualty amended its complaint in the Coverage Action to assert various cross-claims against Travelers and OneBeacon, LEM's other insurers. JA 0255-56. Defendants also named a putative class of defendants consisting of all Asbestos Claimants with claims pending against LEM. JA 0256.

On June 2, 2006, LEM filed for bankruptcy in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code (the "Bankruptcy Action"). *Id.* In the Coverage Action and the underlying Bankruptcy Action, both Maryland Casualty and Travelers have taken the position that all Asbestos Claims are subject to the "per occurrence" aggregate limits in the Policies for claims falling within the "products" or "completed operations" hazards set forth therein. JA 0044; 0257. Specifically, Maryland Casualty asserts that its policies issued to the Debtor have $26 million in aggregate limits of which it claims that $21.4 million have been exhausted. JA 0044; 0140-41; 0257.[1] Because LEM has had no ongoing business or operating assets for nearly four decades, the sole material assets of the bankrupt estate are LEM's rights to insurance coverage for the Asbestos Claims. JA 0097-

---

[1]    The Nicholl Claimants have taken and continue to take the position that the Asbestos Claims are not products/completed operations claims, and thus payment of the underlying Asbestos Claims does not erode the aggregate limits of the Policies. Neither the Bankruptcy Court nor the Harford County Court has ruled as to whether the Asbestos Claims are products/completed operations claims.

98 (counsel for Debtor conceded below that "the asset of the estate here is the right to enforce the insurance contract.").

On or about October of 2010, the Insurers, the Angelos Firm, and the Debtor ("Appellees" in this court; "Movants" below) reached a proposed settlement agreement (the "Proposed Settlement") that would pay up to full value – that is, 100 cents on the dollar – for each and every claimant represented by the Angelos Firm before paying anything to any other claimant.  JA 0045; 0076; 0155-56.  To this day, Appellees have not disclosed the full Proposed Settlement to Appellants or to any of the reviewing courts below including the District Court, the Bankruptcy Court, and the Harford County Court.  JA 0042; 0167.

Soon thereafter, Appellees moved the Bankruptcy Court for relief from the automatic stay to enter into the Proposed Settlement.  JA 0066.  After oppositions were filed (including by Appellants), oral argument was heard in the Bankruptcy Court on November 12, 2010.  JA 0037.  On September 30, 2011, the Bankruptcy Court issued a 12-page Order (the "Initial Lift Stay Order") granting in part and denying in part the motion for relief from stay.  *Id.*  The Initial Lift Stay Order lifted the automatic stay in part to permit Movants to, *inter alia*, "submit the Settlement Agreement to the Circuit Court for Harford County for approval of the terms of the Settlement Agreement in the context of the Harford County litigation,"

while prohibiting the Appellees from consummating the Proposed Settlement and paying any claims pursuant thereto.  JA 0046-47.

The Initial Lift Stay Order recognized that the proposed Settlement Agreement made "no provision for the non-settling claimants," JA 0046, and expressed its concern that:

> The Insurers and the Angelos Firm have instead agreed to start payments under the insurance policies for some but not all, leaving the non-settling claimants to litigate their claims and their coverage and, at the end of the day, hope that some proceeds remain to pay their claims.  <u>Such a scenario is antithetical to a process that guarantees fairness and equality of distribution</u>.

*Id.* (emphasis added)

In light of these concerns, the Bankruptcy Court directed the Harford County Court to "judge the fairness and appropriateness of the [Proposed] Settlement Agreement."  *Id.*  In accordance therewith, the parties briefed the issue and presented oral argument before Judge William O. Carr of the Circuit Court for Harford County on February 6, 2012.  JA 0049.

On September 1, 2012, Judge Carr issued a sixteen-page opinion approving the Proposed Settlement.  *Id.*  (the "Harford County Memorandum Opinion").  The Appellees returned to the Bankruptcy Court and filed a renewed motion to lift the automatic stay to permit them to enter into the Proposed Settlement and pay claims, to which the Nicholl Claimants again objected.  JA 0066.

The Bankruptcy Court granted Appellees' motion and lifted the stay to permit the parties to enter into the Proposed Settlement by its November 29, 2012 Lift Stay Order. JA 0099. The Bankruptcy Court also subsequently denied the Nicholl Claimants' timely motion for reconsideration on March 29, 2013. JA 0121. Appellants timely appealed the Bankruptcy Court's 11/29/2012 and 3/29/2013 Orders to the District Court on April 11, 2013. JA 0127. The District Court affirmed the Bankruptcy Court's orders on March 26, 2014 in a fifteen-page Memorandum Opinion filed under seal. JA 0143; 0254-268. Appellants timely appealed the District Court's order to this Court on April 7, 2014. JA 0144.

## SUMMARY OF ARGUMENT

This appeal regards an order by the Bankruptcy Court lifting the automatic stay to permit one group of creditors to consummate a settlement with the Debtor while certain disputed insurance coverage issues remain pending and unresolved in state court. If the Insurers prevail in state court on those coverage issues, the proposed settlement would leave the Debtor with no assets remaining to pay the claims of the *non*-settling creditors, including Appellants.

Thus, the Nicholl Claimants contend that it would contravene the substantive fairness requirements inherent in the bankruptcy process, set forth by Congress as one of the fundamental purposes of the automatic stay, and expressly articulated by this Court in *Robbins v. Robbins* (*In re Robbins*), 964 F.2d 342, 345 (4th Cir. 1992)

7

to permit the parties to enter into and actually pay claims pursuant to the Settlement Agreement prior to the resolution of those open coverage issues.

Specifically, although the Bankruptcy Court correctly *articulated* the appropriate issues as to substantive fairness upon learning of the proposed settlement, that Court never actually *determined* whether the proposed settlement was substantively fair to the Appellants as creditors. Rather, the Bankruptcy Court delegated the fairness inquiry to a state court – the Circuit Court for Harford County – that conducted only a lesser, procedural inquiry urged upon it by the Appellees. The District Court's subsequent efforts to shoehorn the Bankruptcy Court's decision into the appropriate legal standard for granting relief rely on plain errors of fact and law.

Because the Bankruptcy Court did not conduct the fairness inquiry required by law, its order lifting the stay to permit the Appellees to enter into the proposed settlement agreement contravenes the law in this circuit, constitutes an abuse of discretion, and therefore must be reversed.

## STANDARD OF REVIEW

A district court's legal conclusions are reviewed *de novo*. *United States v. Mehta*, 594 F.3d 227, 281 (4th Cir. 2010). Here, the District Court conducted no factfinding and held no hearings; rather, it served as the initial appellate review of the Lift Stay Order entered into by the Bankruptcy Court. JA 0143; 0254-268.

8

Bankruptcy Courts may lift the automatic stay pursuant to 11 U.S.C. Section 362(d) "for cause," but should do so only in "appropriate circumstances." *Robbins v. Robbins* (*In re Robbins*), 964 F.2d 342, 345 (4th Cir. 1992). To overturn the bankruptcy court's decision to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1), this Court must find that the bankruptcy court abused its discretion. *Id.* at 345. As in the District Court below, this Court reviews the bankruptcy court's legal conclusions *de novo* and findings of fact for clear error. JA 0260; *see Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.),* 128 F.3d 203, 206 (4th Cir. 1997).

Appellants' primary argument is that the Bankruptcy Court applied the wrong legal standard in lifting the automatic stay; if so, this constitutes an abuse of discretion *per se*. *See, e.g., Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (a bankruptcy court judge abuses his discretion in lifting the automatic stay if he "relies upon clearly erroneous findings of fact or uses an erroneous legal standard.") (emphasis added). *See also* JA 0261.

9

## ARGUMENT

**I.** **THE DISTRICT COURT ERRONEOUSLY HELD THAT THE BANKRTUPCY COURT APPLIED THE PROPER LEGAL STANDARD IN GRANTING RELIEF FROM THE AUTOMATIC STAY.**

      A.    <u>In Order To Lift The Automatic Stay, The Bankruptcy Court Must Find That All Three Factors Set Forth By This Court In *Robbins* Favor Lifting The Stay</u>.

It is undisputed that the appropriate standard for lifting an automatic stay was set forth in this Court's decision in *Robbins*; namely, that in exercising their discretion to grant such relief pursuant to 11 U.S.C. § 362(d)(1), bankruptcy courts must "balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345; JA 0264 & n.6. To determine the proper balance, a bankruptcy court must consider the following three factors before lifting the automatic stay, and – prior to this case – no Maryland bankruptcy court has *ever* lifted the automatic stay without finding that all three factors were met:

     (1)    whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;

     (2)    whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and

10

> (3)    whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins*, 964 F.2d at 345. *See also id.* at 346 (estate would be protected because "bankruptcy court would retain jurisdiction subsequently to determine the allowance of claims against the estate … this court is exclusively authorized to adjudicate the impact of that entitlement upon any property subject to the claims of other creditors of the estate."); *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) ("The court's decision [to grant relief from the automatic stay] did not harm the rights of the bankruptcy estate's creditors because the bankruptcy estate retained sufficient assets to pay in full all of the debtor's creditor's pursuant to a plan of reorganization."); *In re Huffman*, 989 F.2d 493, 1993 WL 83359 (4th Cir. 1993) (unpub.) at *2 (where bankruptcy filed after foreclosure sale but before ratification, "lifting the stay would not harm the estates or the interests of other creditors. Huffman, and now during bankruptcy, the estate, owns bare legal title. … Any equity in redemption ceased to exist as an interest in land on the day of the foreclosure sale.").

Appellants' central argument is that the relevant courts below did <u>not</u> apply the straightforward, three-part inquiry required by this Court in *Robbins*; instead, the Bankruptcy Court deferred to a far lesser state law standard articulated by this Court in *Shelton v. Pargo*, 582 F.2d 1298 (4th Cir. 1978) that does not apply in

11

bankruptcy and – most critically – does not contain the "fairness requirements implicit in [the class action] process" that the Bankruptcy Court erroneously presumed it did.  As the Harford County court candidly admitted, "under *Shelton* … [a] review of fairness and adequacy **is not required**."  JA 0059.  Thus, instead of evaluating the substantive fairness of the Proposed Settlement, the courts below simply concluded that the Proposed Settlement was *procedurally* fair; that is, that the non-settling claimants remain "free to litigate the issue of the scope of coverage for these asbestos claims."  JA 0062; 0106; 0265.  That is simply not enough to satisfy this Court's standard for fairness set forth in *Robbins*.

B.  The District Court Mischaracterized The Bankruptcy Court's Order as Correctly Applying *Robbins* When, In Fact, It Did Not.

In affirming, the District Court held:



JA 0265 (italics in original).

12

Both components of this ruling are in clear error. The first part, [1], reiterates a claim to *procedural* fairness – that the nonsettling parties are ████████

████████████████████████████████████████████████

*Id.* & n.7. This misapprehends the *substantive* fairness inquiry plainly required by this Court in *Robbins* before any bankruptcy court can lift the automatic stay. The second part, [2], draws a distinction that is not only without a legal difference, but one that is actually prohibited by long-standing bankruptcy law holding that the right to recover under subject insurance policies legally <u>is</u> property of the estate, and thus funds paid pursuant to those policies are, in fact, paid by the estate. These arguments are set forth below.

## II. THE DISTRICT COURT ERRED AS A MATTER OF LAW BECAUSE A PROPER *ROBBINS* INQUIRY REQUIRES THE BANKRUPTCY COURT TO DETERMINE THAT LIFTING THE AUTOMATIC STAY IS SUBSTANTIVELY FAIR, AND NOT MERELY PROCEDURALLY FAIR.

### A. <u>Under *Robbins,* A Bankruptcy Court Must Determine Whether Lifting the Automatic Stay Actually Risks Unequal Treatment of Creditors.</u>

#### 1. *One of the Primary Purposes of the Automatic Stay is to Protect the Debtor By Ensuring Equal Treatment of All Creditors*

A bankruptcy filing automatically stays all proceedings involving the Debtor's assets, subject to various exceptions. *See* 11 U.S.C. § 362. One of the fundamental purposes of the automatic stay is to protect the relative position of creditors by preserving the assets of the Debtor for the benefit of all creditors.

13

*Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *Robbins*, 964 F.2d at 345 (citing, *inter alia*, 2 Collier on Bankruptcy § 362.07 (15th ed. 1992)).   As a result, the automatic stay provision has been described as "one of the fundamental debtor protections provided by the bankruptcy laws," which "plays a vital role in bankruptcy." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992); *see H&H Beverage Distributors v. Dep't of Revenue of Comm. of Pa.*, 850 F.2d 165, 166 (3d Cir. 1988) (citing Congressional testimony recorded in H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6296 for the proposition that the § 362 automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws.").

Moreover, the primary mechanism by which the automatic stay protects debtors is by ensuring equal treatment among the debtor's creditors in order to prevent a race among those creditors to assert claims against the debtor.  *A.H. Robins Co. v. Piccinin*, 788 F.3d 994, 998 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (noting that Section 362 "preclude[s] one creditor from pursuing a remedy to the disadvantage of other creditors"); *see Tringali, supra*, 796 F.2d at 562 (collecting cases); *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 (C.D. Cal. Dec. 9, 2011) at *3 (one of the basic goals of bankruptcy is to provide an "orderly liquidation procedure that treats all creditors

14

equally."); *H&H Beverage Distributors*, 850 F.2d at 166 (citing *University Med. Center v. Sullivan (In re Univ. Med. Center)*, 973 F.2d 1065, 1074 (3d Cir.1992)); *Lincoln Sav. Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*, 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (from the creditor's perspective, the automatic stay protects property of the estate "in a manner consistent with the bankruptcy goal of equal treatment by ensuring that no creditor receives more than an equitable share of the bankrupt's estate.") *Holtkamp v. Littlefield (Matter of Holtkamp)*, 669 F.2d 505, 508 (7th Cir.1982) ("purpose of automatic stay is ... to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured"); *In re Ionosphere Clubs, Inc.*, 133 B.R. 5, 8 (S.D.N.Y. 1991) (same).

> 2.     *Contrary to the Requirements of* Robbins*, The Bankruptcy Court Did Not Determine That Lifting the Automatic Stay Would Not Favor Some Creditors at the Expense of Other, Similarly-Situated Creditors In Deciding to Lift the Stay.*

Because § 362 specifically protects the equal treatment of creditors, a creditor moving to lift the automatic stay must demonstrate that this equal treatment will not be threatened before the court can properly lift the stay.  As one bankruptcy court put it, "It is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted."  *In re Martha*

15

*Washington Hosp.*, 157 B.R. 392, 395 (N.D. Ill. 1993). To that end, courts have consistently held that the Debtor may not waive the protections of the automatic stay if doing so would jeopardize the equal treatment of creditors. *See, e.g., Farm Credit of Cent. Florida, ACA v. Polk*, 160 B.R. 870, 873 (M.D. Fla. 1993) (citing *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir.1986) for the proposition that "[s]ince the purpose of the stay is to protect the creditors, as well as [the Debtor], [Debtor] could not have unilaterally waived the automatic stay against the interest of his creditors."); *In re Sky Group Int'l, Inc.*, 108 B.R. 86, 88-89 (Bankr.W.D.Pa.1989) (rejecting debtor's agreement to waive § 362 because debtor's waiver "ignores the fact that the stay is designed to protect all creditors and to treat them equally.")

Thus, prior to lifting the automatic stay, the Bankruptcy Court must determine that by doing so, "no great prejudice to the bankruptcy estate would result." *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 at *9-10 (citing H.R. Rep. No. 95-595, at 341 (1977), S.Rep. No. 95-989, at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836). Specifically, in the context of insurance proceeds, a bankruptcy court may not lift the automatic stay without first determining whether doing so would impair the assets of the estate. *See, e.g., Royal Ins. Co. of America v. McCrory Corp.*, 1996 WL 204482, *2 (S.D.N.Y. Apr. 25, 1996) (reversing bankruptcy court order lifting automatic stay and directing, on remand, that the

16

bankruptcy court "must state for the record his findings of fact as to whether the proposed action by appellants will burden the estate or any other participants in the bankruptcy proceeding.").

In its Initial Lift Stay Order, the Bankruptcy Court recognized this fundamental requirement. It stated:

> Movants intend that the Settling Claims be both liquidated *and paid* prior to any other claims, including the non-settling asbestos claims. … The Court continues to have its concerns about paying certain claimants ahead of others when insurance proceeds are limited. … At the risk of being repetitive, the Court wants to make it clear that it is concerned about favoring certain asbestos victims over others. The bankruptcy process has some essential elements of a class action, where the best interests of all creditors must be considered and balanced. In cases such as this, with mass tort claims and potentially limited insurance proceeds, the distribution of insurance is perhaps the most important aspect of the case. … Here, there has been no provision made for the non-settling claimants. The Insurers and the Angelos Firm have agreed to start payments under the insurance policies for some but not all, leaving the non-settling claimants to litigate their claims and their coverage and, at the end of the day, hope that some proceeds remain to pay their claims. <u>Such a scenario is antithetical to a process that guarantees fairness and equality of distribution</u>.

JA 0044-46 (emphasis added).

3.      *Instead, The Bankruptcy Court Erroneously Believed that the Harford County Court Would Determine Whether the Proposed Settlement Was Fair and Equitable to All Creditors, Including the Non-Settling Claimants.*

In light of its initial concerns about the potential unfairness of the Proposed Settlement, the Bankruptcy Court directed that the parties proceed to the Harford County Court and seek a determination whether the Proposed Settlement was fair and equitable to all creditors, including the non-settling claimaints:

> Stay relief as to some claimants without a determination as to what will happen to other claimants is not appropriate. … The Harford County Litigation [the Coverage Action] figures prominently in this Court's determination of this matter. The substantive coverage issues affecting these parties are not before this Court, having been removed from this Court to the Circuit Court for Harford County by the Debtor and over the objections of the Insurers. The class action proceedings have been started there, with the fairness requirements implicit in that process. Accordingly, the Harford County Court is uniquely qualified to judge the fairness and appropriateness of the [proposed] Settlement Agreement.

JA 0045-46.

Critical to the Bankruptcy Court's directions in its Initial Lift Stay Order was the (erroneous) belief that the "fairness requirements implicit in [the class action] process" in state court would compel the Harford County Court to ensure that "the best interests of all creditors must be considered and balanced." *Id.* Specifically, the Bankruptcy Court expressed serious and continuing "concerns

18

about paying certain claimants ahead of others when insurance proceeds are limited," JA 0045, and believed that the Circuit Court for Harford County could undertake a substantive evaluation of whether the Proposed Settlement was fair and adequate to all parties, including the Nicholl claimants. JA 0046. Critically, the Bankruptcy Court believed that the focal point of the Harford County court's analysis of the substantive fairness of the Proposed Settlement agreement would be "a determination as to **what will happen** to other claimants" if the stay were to be lifted. *Id.* (emphasis added). Without such a determination, the Bankruptcy Court believed that lifting the stay "is not appropriate." *Id.* It got it right the first time.

      B.    <u>Despite the Clear Language of the Initial Lift Stay Order, the Appellees Argued – and the Harford County Court Erroneously Agreed – that the Harford County Court Could Approve the Proposed Settlement Agreement Without Evaluating Whether the Proposed Settlement Was Fair and Equitable to the Non-Settling Claimants</u>.

            1.    *The Appellees Explicitly Urged the Harford County Court to Ignore Whether the Prospective Settlement is Fair or Adequate to the Non-Settling Claimants.*

The Appellees made no arguments to the Harford County Court regarding the substantive effect of the Proposed Settlement on the non-settling parties; instead, they argued that such fairness concerns were irrelevant. JA 0055; *see also* Insurers' Memorandum to the Harford County Court at 13 (arguing that the Harford County Court should not evaluate "whether the settlement is 'fair' or 'adequate' to those non-settling parties, who are not settling or releasing

19

anything."). Nor did Movants even provide the Harford County court with an unredacted copy of the Proposed Settlement identifying the parties to the Proposed Settlement or the amounts to be paid under the Proposed Settlement by and to any party. JA 0063 ("The Joint Movants admit, and this Court recognizes, that they have not provided the settlement amounts and the specific settling parties represented by the Angelos firm."). Thus, Appellees kept the Harford County Court as much in the dark as possible regarding the possible effects of their Proposed Settlement.

2.    *The Harford County Court Refused to Determine "What Will Happen To Other Claimants" In the Event That the Stay Is Lifted.*

In its Initial Stay Order, the Bankruptcy Court correctly noted that, under the *Robbins* standard, awarding "[s]tay relief as to some claimants without a determination as to what will happen to other claimants *is not appropriate*." JA 0045-46. Despite this clear direction, it is clear that – at Appellees' urging – the Harford County Court explicitly disclaimed any obligation to determine what would actually happen to those "other claimants"; that is, whether the non-settling claimants would be potentially impaired in their ability to recover from the Debtor's estate in the event that the stay was lifted and the Proposed Settlement was consummated.

20

Instead, the Harford County court concluded that, in its view, the applicable state law standard – *Shelton v. Pargo*, 582 F.2d 1298 (4th Cir. 1978) – did *not* contain the "fairness requirements implicit in [the class action] process" the Bankruptcy Court presumed it did; that, "under *Shelton* … [a] review of fairness and adequacy *is not required*." JA 0059 (emphasis added). Thus, instead of evaluating the substantive fairness of the Proposed Settlement with respect to the non-settling claimants, the Harford County Court simply concluded that the Proposed Settlement was *procedurally* fair; that is, that the non-settling claimants remain "free to litigate the issue of the scope of coverage for these asbestos claims." JA 0062. In other words: the Harford County Court disregarded the fundamental inquiry the Bankruptcy Court sought to put before it: to determine "what will happen" to the non-settling claimants in the event that the stay were to be lifted.

The District Court explicitly acknowledged that the Harford County Court employed only this lesser standard. JA 0263. ███████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████ However, in a footnote, the District Court attempted to rehabilitate the Bankruptcy Court's obviously improper deference to this determination:

21



JA 0264-65 n.6.

    This effort errs as a matter of law.  Although both the Bankruptcy Court and the District Court in its affirmance assert that Judge Carr's opinion "was not the sole factor" in granting the Lift Stay Order, neither the Bankruptcy Court nor the District Court identify any additional factual findings made by the Bankruptcy Court.  Rather, *all* of the reasons set forth in the District Court opinion as ostensibly satisfying a *Robbins* analysis are, in fact, taken directly from Judge Carr's opinion applying *Shelton*, not *Robbins*.  JA 0265.

    Moreover, the Bankruptcy Court explicitly excluded from its analysis any consideration of the potential harm to the debtor's estate (as too "speculative"), despite the plain injunction from this Court in *Robbins* that a bankruptcy court explicitly consider and "balance *potential* prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from

the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345 (emphasis added). *See supra* at Part III.C.

Put simply: the analysis performed by the Bankruptcy Court – drawn entirely from Judge Carr's opinion – cannot satisfy this Court's requirements as set forth in *Robbins*, and thus constitutes reversible error.

> 3. *The Harford County Court Could Not Have Properly Applied* Shelton v. Pargo *in Any Event Because It Did Not Have the Settlement Amounts and the Settling Parties Before It.*

Finally, it is clear that the Harford County Court's minimal analysis conducted under *Shelton v. Pargo* cannot possibly have complied with federal law and thus cannot form any reasonable basis for the Bankruptcy Court's subsequent decision to lift the automatic stay, because Judge Carr never requested – and Appellees never provided – a full and unredacted copy of the Proposed Settlement Agreement that identified the settling parties and the amounts to be paid.

In *Shelton v. Pargo*, this Court – in plain and unambiguous language – explicitly instructs a reviewing court to "conduct a careful inquiry into the terms of the settlement, particularly the amount paid the plaintiff in purported compromise of his individual claim and the compensation to be received by plaintiff's counsel." *Shelton*, 582 F.2d at 1315. Indeed, this Court in *Shelton* found this requirement so essential to the analysis that they reiterated and repeated the requirement just two paragraphs later for emphasis: "We repeat that the amount of the compromise

payment is an important fact to be given careful consideration by the District Court in resolving the possibility of collusion in the settlement." *Id.*

The Harford County court conceded that the Movants "have not provided the settlement amounts and the specific settling parties represented by the Angelos firm." JA 0063. However, that court claimed instead that it was provided "a great deal of information" by Movants as to the terms of the Proposed Settlement. *Id.* That information turned out to be just three things: (1) the releases by and between the Movants; (2) the settlement values for just two of the more than 9,000 Angelos Claimants; and (3) the fact that those two claimants agree to release LEM from any further claims. *Id.* Regardless of whether this information can be fairly characterized as "a great deal," it is plainly not the information that this Court has directed a reviewing court to consider – that is, the amounts paid to *each* settling plaintiff and the compensation to be received by plaintiffs' counsel. *Shelton*, 582 F.2d at 1315.

Because it did not do so, the Harford County Court did not in fact conduct the analysis it claimed to have done pursuant to *Shelton v. Pargo*, and thus it was an abuse of discretion for the Bankruptcy Court to rely on it.[2] *See Boyd v. Bell*

---

[2]      Moreover, even though Appellants do not claim that the Proposed Settlement Agreement is the result of collusion in the colloquial sense, it is clear that the Harford County Court also could not have conducted such an analysis without knowing the full amounts to be paid pursuant to the Settlement Agreement.

*Atlantic-Maryland, Inc.*, 887 A.2d 637, 651 (2005) (In evaluating a class action settlement, a court cannot determine if a settlement is "adequate and fair" until it is made aware of precisely how all sums to be disbursed are allocated.) As in *Boyd*, because neither the Bankrtupcy Court nor the Harford County Court knows the amount of the ultimate settlement and how that amount will be allocated among the prospective class members, the Bankrtuptcy Court cannot conclude that the proposed Settlement Agreement is fair and appropriate to the non-settling parties.

*    *    *

At the end of the day, *no* court has yet conducted the review of fairness and adequacy that the Bankruptcy Court recognized was required in its Initial Lift Stay Order. No court has determined "what will happen" to the non-settling claimants if the stay is lifted and the Proposed Settlement is consummated. Accordingly, it was error for the District Court to determine that the Bankruptcy Court ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ in lifting the automatic stay. JA 0264; *Royal Ins. Co.*, 1996 WL 204482 at *2; *see Robbins*, 964 F.2d at 345.

---

As the *Shelton* court explained, "In "focusing" on the possibility of collusion … the District Court should conduct a careful inquiry <u>into the terms of the settlement,</u> <u>particularly the amount paid the plaintiff</u> in purported compromise of his individual claim and the compensation to be received by plaintiff's counsel, in order to insure that, under the guise of compromising the plaintiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney." *Shelton*, 582 F.2d at 1306 (emphasis added).

25

## III. IN ITS ONLY SUPPOSED FACTUAL FINDING, THE DISTRICT COURT DREW AN ERRONEOUS LEGAL DISTINCTION BETWEEN FUNDS PAID BY THE ESTATE AND FUNDS PAID BY THE INSURERS.

After reiterating its conclusion regarding the procedural – but not substantive – fairness of the Proposed Settlement Agreement, the District Court claimed that ███████████████████████ JA 0265. It then quoted the (erroneous) distinction drawn by the Bankruptcy Court below; that "[t]he Settlement Agreement does not require that the *estate* pay any funds – all of the funds are to be paid by the settling insurance companies." *Id.*

### A. Insurance Proceeds Are Property of the Debtor's Estate.

There can be no meaningful distinction between whether the "estate" pays any funds or the "settling insurance companies" pay any funds, because long-standing law in the Circuit and elsewhere makes it clear that the insurance policies that are the subject of the Proposed Settlement are, in fact, assets of the bankrupt estate of LEM. *A.H. Robins Co., supra,* 788 F.2d at 1001-02 (4th Cir. 1986), (debtor's insurance rights are property of the estate); *In re Davis*, 730 F.2d 176, 183–84 (5th Cir.1984) (per curiam) (holding that insurance policies fell within the definition of "property of the estate" in 11 U.S.C. § 541(a)(1), thus establishing jurisdiction over "direct action" claims that would diminish those policies).

26

Indeed, in this particular case, no party has disputed that the right to recover pursuant to the subject insurance policies constitutes the *only* material asset of the bankruptcy estate.   JA 0097-98 (in which Debtor's counsel conceded at oral argument that "the asset of the estate here is the right to enforce the insurance contract.").

B.    Consummation of the Proposed Settlement Agreement Threatens the Sole Asset of the Debtor's Estate.

Nor has any party seriously contested that the Proposed Settlement Agreement potentially jeopardizes that sole material asset of LEM.   Although Appellees have not disclosed an unredacted copy of the Proposed Settlement Agreement to any other court or party, they have conceded certain facts concerning the effect of the settlement during the course of this litigation.   In particular, all of the Appellees, including both Maryland Casualty and Travelers as well as the Angelos Claimants, have represented that the amount of the Settlement Agreement exceeds the aggregate limits remaining on the Maryland Casualty policies (approximately $4.6 million, according to Maryland Casualty).   The Insurers' position that the asbestos-related claims are subject to aggregate limits of liability in the Maryland Casualty policies means that payments authorized by the Proposed Settlement will, if the Insurers are correct, exhaust the remaining aggregate limits

27

of at least the Maryland Casualty policy and possibly the entirety of LEM's assets. JA 0044; 0046; 0140-41; 0257.

The upshot is that if the Insurers prevail on their claims in the Coverage Action that payment of the underlying Asbestos Claims exhausts the remaining aggregate limits of the Policies, each and every one of the underlying asbestos plaintiffs represented by the Angelos Firm will have received up to 100 cents on the dollar for their claims, *see* JA 0062; 0155; 0156, while every other similarly-situated claimant – including the Nicholl Claimants – will receive *nothing*.

C.    The Potential Harm to Non-Settling Parties is Real and Not "Speculative."

The District Court also attempted to justify its affirmance by noting ███████

████████████████████████████████████████████████████████████

████████████████████████████████████ JA 0266 (citing JA 0062).  However, *none* of the reviewing courts – not the District Court, nor the Bankruptcy Court, nor the Harford County Court cited any authority for the proposition that the Bankruptcy Court should not consider the *potential* exhaustion of estate assets in determining whether or not to grant relief from the automatic stay.[3]  Appellants respectfully suggest that this conclusion, too, is legal error, and

---

[3]    In ostensible support of the proposition that "speculation is insufficient to block the settlement," the Harford County Court Order cites only to *Clark v. Ezra*, 286 Md. 208, 219, 406 A.2d 922, 928 (1979) for the uncontested proposition that

28

that *Robbins* <u>requires</u> the Bankruptcy Court to consider and "balance *potential*

prejudice to the bankruptcy debtor's estate against the hardships that will be

incurred by the person seeking relief from the automatic stay if relief is denied."

*Robbins*, 964 F.2d at 345 (emphasis added). Indeed, the whole point of the

automatic stay is to prevent one group of creditors from shifting the risk of non-

recovery to another, similarly-situated group of creditors. *Id.*

Moreover – as one bankruptcy court noted – "Congress intended property of

the estate to include all legally cognizable interests," including "[e]very

conceivable interest of the debtor, future, nonpossessory, contingent, speculative,

and derivative." *In re Cady*, 440 B.R. 16, 20 & n.10 (Bktcy. N.D.N.Y. Nov. 22,

---

public policy generally favors settlement. JA 0062. However, courts have
consistently held that this *generalized* policy favoring settlement must give way in
cases such as this one where there is an underlying state law class action pending.
*See In re Microsoft Corp. Antitrust Litigation*, 332 F.Supp.2d 890, 895-96 (D.Md.
2004) ("Nonetheless, I must be alert to the possibility that a class representative
might violate his fiduciary obligation to putative class members, and that dismissal
and/or settlement might prejudice the rights of absent class members such that
denial of the motion for dismissal or notice to putative class members might be
required."); *Dotson v. Bell Atlantic-Maryland, Inc.*, 2003 WL 23508428, *5 (Md.
Cir. Ct. Nov. 13, 2003) ("Although settlement is favored, court review must not be
perfunctory; the dynamics of class action settlement may lead the negotiating
parties – even those with the best intentions – to give insufficient weight to the
interests of at least some class members.") (citing MANUAL FOR COMPLEX
LITIGATION, THIRD § 30.42 at 238 (1995)); *see also Goldenberg v. Marriott
PLP Corp.*, 33 F.Supp.2d 434, 440 (D.Md. 1998) ("Accordingly, the Court has a
continuing duty to act as a fiduciary to the members of the class, a guardian of their
interests in the settlement.").

2010) (citing, *inter alia*, 4 Collier on Bankruptcy § 541.01 (15th ed. 2001)) (emphasis added); *see also In re Paradise Homes, Inc.*, 2008 WL 619330, *4 & n.4 (Bktcy. S.D. Ill. Mar. 5, 2008) (same).

Thus, because § 541 of the Bankruptcy Code defines "property" in the broadest possible terms – including speculative future events – bankruptcy courts lack the discretion to do what the Bankruptcy Court here has done; namely, simply dismiss potential future impingements upon the Debtor's estate as "speculative" and therefore not worth evaluating. Instead, courts are required to weigh the *potential* prejudice if the automatic stay were lifted, and – if the magnitude of the potential harm is sufficient – deny efforts to lift the automatic stay in such cases even where the potential harm has not yet manifested. *See, e.g., In re 2655 Bush LLC*, 2012 WL 2792325, *2-3 (Bktcy. N.D. Cal. July 6, 2012) (denying motion to lift stay despite movants' claim that harm to debtor in potentially obstructing development of property would be entirely speculative); *In re Landmark Fence Co., Inc.*, 2011 WL 6826253 (C.D. Cal. Dec. 9, 2011) (affirming bankruptcy court's refusal to lift stay where harm to Debtor was potential future costs of litigation in state court); *see also Royal Ins. Co., supra,* 1997 WL 204482 (reversing bankruptcy court's lifting of the automatic stay because bankruptcy court judge did not "state for the record his findings of fact as to whether the proposed action by appellants will burden the estate or any other participants in the

30

bankruptcy proceeding"); *cf. In re Irwin*, 457 B.R. 413, 421 (Bktcy. E.D. Pa. Sept. 15, 2011) (granting relief from stay where opponents argued that proceeding would have collaterally estopped estate from subsequently attempting to set aside transfers and thus impair estate, and holding "[t]o evaluate the merits… I must consider the likelihood (or risk) that following the Receiver's success in her proposed initial lawsuit, the doctrine of collateral estoppel would be applied against the bankruptcy estate in a later transfer avoidance proceeding.").

In other words:  the *risk* of policy exhaustion itself – and not any actual exhaustion that may or may not occur – plainly constitutes a diminution in the "property" of the Debtor's estate, and the Bankruptcy Court was required to consider it under *Robbins*.   Indeed, the Bankruptcy Court previously noted precisely this point in its Initial Lift Stay Order:

> Here, there has been no provision made for the non-settling claimants.  The Insurers and the Angelos Firm have instead agreed to start payments under the insurance policies for some but not all, leaving the non-settling claimants to litigate their claims and their coverage and, at the end of the day, hope that some proceeds remain to pay their claims.  <u>Such a scenario is antithetical to a process that guarantees fairness and equality of distribution</u>.

JA 0046 (emphasis added).

Had the Bankruptcy Court properly considered the potential risks to the debtor's estate if the Proposed Settlement is consummated, it could not have

31

accepted the Harford County Court's conclusion that the Proposed Settlement "does not prejudice the non-settling claimants because … these claimants can pursue their claims and assert coverage for those claims after the settlement." JA 0107. If Insurers prevail on the pending coverage issues and the Settlement exhausts the assets of LEM's estate, that would severely prejudice the claims of the non-settling parties (including the Nicholl claimants) by leaving them with *nothing* to recover; obviously, the supposed "right" to pursue one's claims in state court is meaningless if the defendant is effectively judgment-proof because it has no assets.

Thus, far from being able to disregard the Nicholl Claimants' potentially prejudicial legal position as merely "speculative," the Bankruptcy Court was *required* to evaluate that potential risk and balance it against the hardships of the movants.[4]  Because it did not do so, it was an abuse of discretion for the Bankruptcy Court to lift the automatic stay. *Robbins*, 964 F.2d at 345.

---

[4]    Indeed, the Bankruptcy Court was unable to identify any cognizable harm the Appellees might suffer if the stay were to continue; in the section of the opinion evaluating whether "cause" exists to lift the stay, JA 0110-111, the Court pointed only to the fact that the "Insurers have certain rights as stated in the policies, including the right to settle claims," JA 0110, as an affirmative reason to lift the stay.  Of course, these are precisely the sorts of creditor rights that are routinely subordinated in bankruptcy proceedings in order to protect the assets of the debtor's estate. *See, e.g., In re Johns Manville Corp.*, 340 B.R. 49 (S.D.N.Y. 2006), *aff'd in part, rev'd in part on other grounds*, 600 F.3d 135 (2d Cir. 2010) (enforcing automatic stay of all direct claims against insurer in order to preserve assets to pay asbestos claimants in bankruptcy).

## CONCLUSION

For all of the foregoing reasons, this Court should reverse the opinion of the District Court and direct the Bankruptcy Court that the automatic stay shall remain in force as set forth in the Bankruptcy Court's Initial Lift Stay Order.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure and Local Rule 34(a), Appellants respectfully request that this Court grant them oral argument on the issues presented by this appeal.

Dated:  June 23, 2013                          Respectfully submitted,


                                    */s P. Andrew Torrez*
                                    By: P. Andrew Torrez
                                    James Sottile
                                    **ZUCKERMAN SPAEDER LLP**
                                    100 E. Pratt Street, Suite 2440
                                    Baltimore, MD  21202
                                    Telephone:  (410) 332-0444
                                    Facsimile:  (410) 659-0436


                                    Michael T. Edmonds
                                    **THE LAW OFFICES OF PETER T. NICHOLL**
                                    36 South Charles Street
                                    Baltimore, MD  21201
                                    Telephone: (410) 244-7005
                                    Facsimile: (410) 244-1047

                                    *Attorneys for the Nicholl Claimants*

33

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Fed R. App. P. 28.1(e)(2) and 32(a)(7) because it contains 7,137 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately-spaced typeface using Microsoft® Word, Times New Roman, 14-point font.

*/s P. Andrew Torrez*

P. Andrew Torrez

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of June, 2013, the foregoing Brief of Appellants was filed electronically via CM/ECF and electronic copies were served on counsel of record.

*/s P. Andrew Torrez*

P. Andrew Torrez

34

# ADDENDUM

## 11 U.S. CODE § 362 - AUTOMATIC STAY

**(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest

## 11 U.S. CODE § 541 - PROPERTY OF THE ESTATE

**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
**(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

## 28 U.S. CODE § 158 – APPEALS

**(a)** The district courts of the United States shall have jurisdiction to hear appeals [1]
**(1)** from final judgments, orders, and decrees;
**(2)** from interlocutory orders and decrees issued under section 1121 (d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
**(3)** with leave of the court, from other interlocutory orders and decrees;
and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**(d)**

**(1)** The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

**(2)**

**(A)** The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—

**(i)** the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

**(ii)** the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

**(iii)** an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

**(B)** If the bankruptcy court, the district court, or the bankruptcy appellate panel—

**(i)** on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or

**(ii)** receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

**(C)** The parties may supplement the certification with a short statement of the basis for the certification.

**(D)** An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.

**(E)** Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.